849 F.2d 1473
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Weurope SILVERS, a citizen and resident of Unicoi County,
Tennessee, Plaintiff-Appellant (87-5946),
Plaintiff-Appellee (87-5984),
v.
MARTIN COUNTY COAL CORPORATION, a Kentucky corporation with
principal place of business located in Inez,
Kentucky, Defendant-Appellee (87-5946),
Third Party Plaintiff-Appellee (87-5984),
James J. Powell Construction and Erection Company, Inc.,
d/b/a Powell Construction Company, Third Party
Defendant-Appellant (87-5984).
 Nos. 87-5946, 87-5984.
 United States Court of Appeals, Sixth Circuit.
 June 28, 1988.
 
 Before MILBURN, RALPH B. GUY, Jr. and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Weurope Silvers appeals the summary judgment entered for the defendant-appellee Martin County Coal Corporation ("MCCC") in this diversity tort action. For the reasons that follow, we affirm.
 
 I.
 
 2
 MCCC, which has its principal place of business in Martin County, Kentucky, has been engaged in the mining, processing, and loading of coal for seventeen years. It is a large operation and processes over 3,000,000 tons of coal annually. It employs over 500 people and is engaged in both surface and underground mining. MCCC's place of business contains numerous structures of various sizes. In 1985, MCCC decided to replace the metal siding on all of the structures located at its processing plant site. The processing plant had been in operation for nearly fifteen years, and the company was of the opinion that because of normal wear and deterioration, the corrugated metal siding on the buildings should be replaced. MCCC contracted with James J. Powell Construction and Erection Company, Inc. ("Powell Construction"), plaintiff Silvers' employer, to do the work. The contract provided that Powell Construction would supply workers' compensation insurance for the employees used in performing the contract.
 
 
 3
 MCCC employs a seven- or eight-man maintenance crew which usually replaces any damaged or deteriorated siding in the normal course of maintenance on its buildings. Although not a task the crew frequently performs, it has often replaced corrugated metal siding in the past. However, since the siding on all the structures at the processing plant was being replaced, MCCC decided to hire an outside contractor rather than tie up its maintenance workers with the project.
 
 
 4
 On September 12, 1985, plaintiff Silvers was erecting new metal sheeting on one of the structures. Because it was necessary to work for a period of time near high voltage power lines, Silvers and other employees of Powell Construction directed MCCC's employees and agents to disconnect the power source until work in the area was completed. This was not done and when Silvers subsequently came into contact with a power line, he received a severe electrical shock, causing severe burns to the upper portion of his body and other personal injuries.
 
 
 5
 Silvers filed his personal injury action on April 17, 1986, seeking damages for injuries arising out of the electrical shock. He alleged that MCCC was negligent in failing to disconnect the power supply at the job site. MCCC answered on March 13, 1986, alleging, in part, as one of its defenses, that MCCC was a "contractor" within the meaning of Kentucky's workers' compensation statutes, and, therefore, workers' compensation was Silvers' exclusive remedy. Subsequently, MCCC filed a third-party action against Powell Construction, seeking indemnity as provided in the contract. Powell Construction answered and counterclaimed, alleging that MCCC was liable for indemnity for payments made under workers' compensation to Silvers. By consent, the action was tried before a Magistrate.
 
 
 6
 MCCC filed a motion for summary judgment stating that Silvers' exclusive remedy was under the Workers' Compensation Act. The Magistrate agreed, and in a Memorandum Opinion granted MCCC's motion. As the indemnification issues were rendered moot, the third-party action was dismissed on August 3, 1987. A notice of appeal was filed by Silvers on August 20, 1987, and by Powell Construction on August 26, 1987.
 
 
 7
 The sole issue before us on appeal concerns the application of Kentucky's workers' compensation statutes. The parties concede that if the Magistrate was correct in holding that the work performed by Powell Construction is a regular or recurring part of the work or business of MCCC, then MCCC is a contractor entitled to immunity under the workers' compensation statutes.
 
 II.
 
 8
 Kentucky's Workers' Compensation Act provides the sole remedy to an employee injured in the workplace as a result of his employer's negligence. Ky.Rev.Stat.Ann. Sec. 342.690(1) (Michie/Bobbs-Merrill 1983). With regard to subcontractors, the Act provides in pertinent part:
 
 
 9
 A contractor who subcontracts all or any part of a contract and his carrier shall be liable for the payment of compensation to the employees of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured the payment of compensation as provided for in this chapter.... A person who contracts with another ... (b) to have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation or profession of such person, shall for the purposes of this section be deemed a contractor, and such other person a subcontractor.
 
 
 10
 Id. at Sec. 342.610(2) (emphasis supplied). The Magistrate found that the replacement of the corrugated metal siding was a regular or recurrent part of the work of defendant MCCC, and, therefore, MCCC was a contractor under the statute and had no liability in tort to an injured employee of the subcontractor hired to do its work.
 
 
 11
 Plaintiff Silvers contends, however, that the regular business and occupation of MCCC is the mining and processing of coal, and, therefore, the Magistrate erred as a matter of law in concluding that the work in question constitutes a regular or recurrent part of the business. Silvers further contends that the work in question was not ordinary plant maintenance, but was unusual, occurring only every several years and was, as opposed to maintenance, a complete and total renovation of the exterior covering of defendant's buildings.
 
 
 12
 On the other hand, defendant MCCC contends that while its business is the processing of coal, it must maintain the equipment and structures used in that operation. The structures are covered with metal siding, some of which needs to be repaired or replaced every three or four years. MCCC contends that as this work is usually performed by a crew of its employees, the Magistrate correctly concluded that such maintenance is a regular or recurring aspect of its operation.
 
 
 13
 In Firemen's Fund Ins. Co. v. Sherman & Fletcher, 705 S.W.2d 459 (Ky.1986), the Kentucky Supreme Court held that it is clear under section 342.610 that if the employees of a subcontractor are injured in the course of performing "work of a kind which is a regular or recurrent part of the work of the trade, business, occupation or profession" of the contractor, then the contractor "has no liability in tort to an injured employee of [the] subcontractor." Id. at 461. The court continued, holding that "[t]he purpose of the provision of KRS 342.610 that a contractor is liable for compensation benefits to an employee of a subcontractor who does not secure compensation benefits is to prevent subcontracting to irresponsible people." Id. The court construed the statute
 
 
 14
 to mean that a person who engages another to perform a part of the work which is a recurrent part of his business, trade, or occupation is a contractor. Even though he may never perform that particular job with his own employees, he is still a contractor if the job is one that is usually a regular or recurrent part of his trade or occupation.
 
 
 15
 Id. at 462 (emphasis supplied).
 
 
 16
 In Granus v. North American Phillips Lighting Corp., 821 F.2d 1253 (6th Cir.1987) (per curiam), the plaintiff fell down a flight of steps while working at a factory owned by the defendant. The plaintiff was an employee of Corning Glass Works, who had contracted with the defendant to refurbish and upgrade a glass-melting installation, including relining of the installation's furnace with brick. The evidence in that case established that furnaces at glass factories must be rebricked periodically as a matter of maintenance and that the plaintiff had assisted in rebricking the facility when it was previously owned by Corning Glass Works.
 
 
 17
 We reiterated that "[i]f a defendant qualifies as a 'contractor ... it has no liability in tort to an injured employee of a subcontractor.' " Id. at 1257 (quoting Firemen's Fund, 705 S.W. at 461). Finding that the relining of furnaces was required periodically as a matter of regular maintenance, we held that the defendant was a contractor when it contracted with the plaintiff's employer to do the work. Granus, 821 F.2d at 1258.
 
 
 18
 When our holding in Granus is applied to the present case, it is clear that the Magistrate correctly concluded that defendant MCCC is a contractor within the meaning of the statute. It is undisputed that MCCC, in order to carry out its business of processing coal, must maintain its facilities. These facilities are covered with metal siding which must be periodically repaired or replaced. Thus, since the work performed by Silvers' employer is necessary for the maintenance of MCCC's operation, it is a regular part of MCCC's business. There is simply no difference between rebricking a furnace, as occurred in Granus, and replacing metal siding on a building. As the statute reads regular or recurring, not regular and recurring, both need not be required.
 
 III.
 
 19
 Accordingly, for the reasons stated, the judgment of the Magistrate is AFFIRMED.
 
 
 20
 RALPH B. GUY, Jr., Circuit Judge, dissenting.
 
 
 21
 I respectfully dissent. The majority opinion considers the regularity with which a function is performed to the exclusion of whether the function is "a regular or recurrent part of the work of the trade, business, occupation or profession of such person...." This has the effect of bringing under the purview of the statute all in-house acts of routine maintenance if they become the subject of an outside contract.
 
 
 22
 I find that neither of the cases cited by the court dictate the result reached here. In fact, the quote from Firemen's Fund Insurance v. Sherman & Fletcher, 705 S.W.2d 459 (Ky.1986), undercuts the majority holding. Firemen's Fund makes it crystal clear that the purpose of the Kentucky statute is to "prevent subcontracting to irresponsible people." To place this kind of duty on employers who are farming out work that is an integral part of their business makes sense, but to place this burden on an employer every time he has an outsider put on a new roof or paint his building makes no sense.
 
 
 23
 Admittedly, Granus v. North American Philips Lighting Corp., 821 F.2d 1253 (6th Cir.1987), has a superficial similarity to this case, but is clearly distinguishable. Three things need to be noted about Granus. First, although it is a precedent that may be applied by analogy, it is not controlling on the issue presented here because of the difference in facts. This is not a case where we are bound by the decision of another panel, whether that decision be right or wrong. Second, it is interesting to note that in Granus the "employer-contractor" did not even assert the workers compensation statute as a defense until late in the proceedings and half the Granus opinion is devoted to a discussion of whether this late defense should have even been allowed. Third, and most significant, is the fact that the tank involved in Granus was integral to the process that was the "employer-contractors" business. There is an obvious distinction between fixtures that are part of a process that constitutes the business and the buildings that house those fixtures. In Granus the relining of the tank was so integral to the process that the new owner, Philips, insisted that Corning (the former owner) workers do the job as part of the conditions of purchase.
 
 
 24
 Finally, I would note that the court resolves this case on the basis of its interpretation of a definitional section of the statute and ignores the primary thrust of the statute. What Kentucky has decreed is that "[a] contractor who subcontracts all or any part of a contract and his carrier shall be liable for the payment of compensation to the employees of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured the payment of compensation as provided for in this chapter...." Ky.Rev.Stat.Ann. Sec. 342.690(2) (Michie/Bobbs-Merrill 1983). When this language is read in conjunction with what the Kentucky courts have told us is the purpose of the statute (Firemen's Fund ), there is no doubt in my mind that the statute was never intended to cover a situation such as the one with which we are confronted here.
 
 
 25
 Both employers and employees must take the bitter with the sweet in interpreting this Kentucky statute. The "employer-contractor" argues coverage here for two very obvious reasons. First, its coverage is secondary, not primary, and since Silver's employer already provides workers compensation coverage, Martin Coal ends up with no liability whatsoever. Second, even if Martin Coal were liable for compensation payments, the liability under the Workers Compensation Act is limited, whereas its third-party tort liability is unlimited. If all that was implicated here was coverage and not potential tort liability, Martin Coal would not be making these arguments and indeed would argue to the contrary.
 
 
 26
 I would emphasize that the employee cannot have it both ways either. If he is within the reach of the statute under these facts as the majority concludes, he is limited to the exclusiveness of his workers compensation remedy and cannot be heard to argue that he would rather pursue a third-party tort claim.
 
 
 27
 I would reverse and remand.